# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

RODNEY RICHARDSON                                                      PLAINTIFF

v.                                No. 2:16CV00106 JLH

CITY OF BLYTHEVILLE, ARKANSAS; and
ROSS THOMPSON, individually and in his official
capacity as Chief of Police                                    DEFENDANTS

## OPINION AND ORDER

Rodney Richardson, a former Blytheville police officer, brings this action against the City of Blytheville and its Chief of Police, Ross Thompson, who terminated Richardson's employment on November 17, 2015. Richardson alleges that the defendants violated his rights under the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983 and the Arkansas Constitution through the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq*. Richardson has filed a motion for partial summary judgment arguing that he is entitled to judgment as a matter of law on two issues pertinent to his claim for violation of his Fourteenth Amendment rights: (1) he was not an at-will employee; and (2) the procedures available to him to contest his termination did not satisfy due process. The defendants have filed a motion for summary judgment arguing that Richardson was an at-will employee and arguing that Thompson is entitled to qualified immunity. For the following reasons, Richardson's motion is denied, the defendants' motion is granted as to Richardson's federal claims, and the Court declines to exercise supplemental jurisdiction over Richardson's state law claims.

## I.

The following facts are undisputed. Richardson became a Blytheville police officer on July 18, 2008. Thompson terminated Richardson's employment on or about December 16, 2012,

but the City Council voted 6-0 to overturn the decision and reinstate him. Thompson terminated Richardson's employment a second time on November 17, 2015, and provided Richardson a written letter, in which he stated:

> Since September 2, 2015, you have been the subject of an investigation by this and other agencies. On two separate occasions, you were deceptive in your answer to questions posed to you during those official investigations. On one occasion, you admitted to violating department policy.
>
> In addition to violating department policy, the investigations have resulted in substantial Brady material rendering you unable to perform the basic job functions as a police officer.

Document #18-2 at 23. On the two separate occasions to which Thompson refers in the letter, Richardson submitted to polygraph tests, one in conjunction with a federal operation known as Blynd Justice and one follow-up test as part of a police department internal investigation. The polygraph results indicated some deception.

On November 18, 2015, Richardson notified the Mayor of Blytheville and the City Clerk that he intended to appeal his termination. In the written notice, Richardson requested an expedited hearing and expressed his desire to continue working as a Blytheville police officer. A hearing was scheduled for December 17, 2015, but because of scheduling conflicts no hearing took place. Another hearing was scheduled for March 21, 2016. Richardson says that when he and his lawyer appeared before the City Council for the second hearing, they were told that the matter would be handled in an executive session, with only the City Council, the mayor, and Richardson in attendance. Richardson and his lawyer objected, demanding a public hearing, the right to have a lawyer present, and the right to present witness testimony. No hearing took place. The defendants dispute Richardson's characterization of the March 21 events.

**II.**

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

**III.**

The Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. A public employee is entitled to procedural due process—notice and an opportunity to be heard—and substantive due process protections if he stands to lose a constitutionally protected property or liberty interest. *See Cleveland*

*Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). A property interest arises from a "legitimate claim of entitlement" to continuing employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Floyd-Gimon v. Univ. of Ark. for Med. Scis. ex rel. Bd. of Trs. of Univ. of Ark.*, 716 F.3d 1141, 1146 (8th Cir. 2013). Richardson asserts that he had a property interest in his continued employment as a police officer and was thus entitled to procedural due process prior to his termination.

Whether an employee possesses a property interest in continued employment depends on state law. *See Roth*, 408 U.S. at 578, 92 S. Ct. at 2709 ("[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits."). In Arkansas, when an employee's contract of employment is for an indefinite term, either party generally may terminate the relationship for good cause, bad cause, or no cause at all. *See Tripcony v. Ark. School for Deaf*, 2012 Ark. 188, 9, 403 S.W.3d 559, 563. In other words, either party generally may terminate the relationship "at will." The at-will doctrine does not apply, however, when an employment agreement or personnel manual provides that an employee may not be terminated except for cause. *See Gladden v. Ark. Children's Hosp.*, 292 Ark. 130, 136, 728 S.W.2d 501, 505 (1987).

Richardson maintains that the City of Blytheville, Arkansas Personnel Handbook contains an enforceable promise and in turn creates a property right, relying on *Cisco v. King*, 90 Ark. App. 307, 205 S.W.3d 808 (2005). Document #18 at 11. In *Cisco*, three former employees of St. Francis County sued for wrongful termination. *Id*. at 311, 205 S.W.3d at 810. The court explained: "The overriding issue presented is whether the Employment and Procedures Manual issued by the County

4

created an employment contract that conferred on appellees the right to be discharged only in accordance with the manual." *Id*. The County argued the employees were terminable at will. The manual stated:

> Except as otherwise provided in these policies and procedures, the tenure of an employee with permanent status shall continue during good behavior and satisfactory performance of his duties except the Road Supervisor and Chief Deputies who are At Will Employees.

*Id*. The Road Supervisor and Chief Deputies were not among the employees who sued. *Id*. at 311-12, 205 S.W.3d at 810. The manual also listed fourteen grounds on which permanent employees could be terminated and distinguished between probationary and permanent employees, indicating that new employees were not considered as permanent until the probationary period was completed and could be terminated for any reason without recourse. *Id*. at 817, 90 Ark. App. at 318.

The court held:

> [T]he breadth of coverage and dissemination of the County's manual coupled with the definiteness and comprehensiveness of its termination policy could reasonably lead an employee to expect that the manual created enforceable employment obligations. The continued employment of appellees as permanent employees completed the contract. Therefore, the County could only terminate appellees for cause.

*Id*. at 319, 205 S.W.3d at 815. The court based its interpretation of the exception to the at-will doctrine on *Crain v. Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991).

In *Crain*, an employer laid off six employees as part of a reduction in the work force. *Id*. at 568, 810 S.W.2d at 911. The employees sued for breach of contract based on the employment handbook, which provided:

> In the event it should become necessary to reduce the number of employees in the work force, employees will be laid off on a seniority basis by department. The last employee hired would be the first to be laid off.

5

*Id*. The handbook contained no express provision on firing only for cause, but it did include a disclaimer that the handbook was not a contract of employment. *Id*. The employer argued that the employees were terminable at will and that the language of the handbook was "precatory" and "insufficient to form the basis of a holding that [the employer] had contracted not to layoff the employees except in accordance with the handbook." *Id*. at 568-69, 810 S.W.2d at 911-12. The court held that it was not error to instruct the jury to find in favor of the employees if the jury found express provisions in the handbook constituting an express agreement.[1] *Id*. at 574, 810 S.W.2d at 915.

Here, however, there is no question of fact as to whether the employee handbook contains an express provision creating a property interest in continued employment. Unlike the employment handbooks in *Crain* and *Cisco*, the personnel handbook at issue in this case contains no provisions that could lead an employee reasonably to believe that the handbook creates enforceable employment obligations. Rather, the personnel handbook expressly provides that the City of Blytheville is an at-will employer:

> The City of Blytheville is an at-will employer. This means that the City of Blytheville or any city employee may terminate the employment relationship at any time for any reason with the understanding that neither has an obligation to base that decision on anything but his or her intent not to continue the employment relationship. No policies, comments, or writings made herein or during the employment process shall be construed in any way to waive this provision. All city employees should understand that this Handbook is not intended to create any contractual or legal rights. It does not alter the city's at-will employment policy nor does it create an employment contract for any period of time.

---

[1] Two justices dissented; the author of the dissent stated: "The above provision contains no language expressing that the employees cannot be discharged except for cause . . . Without an express provision against termination except for good cause, [the employer] clearly reserved its authority to fire any employee for any reason." *Id*. at 579, 810 S.W.2d at 917 (Glaze, J. dissenting).

> \* \* \*
> As mentioned elsewhere in this handbook, all employment relationships with the City of Blytheville are on at-will basis.

This language is unequivocal and it is not contradicted anywhere else in the handbook.[2] "[T]he presence of language in an employment manual asserting the employer's right to fire an employee at any time is even stronger evidence that the manual creates no guarantee for employees that they will be fired only for cause." *Thompson v. Adams*, 268 F.3d 609, 613 (8th Cir. 2001); *see also Veazey v. Ark. Dept. of Corrs.*, No. 5:05CV080 JLH, 2006 WL 2850040 at \*8 (E.D. Ark. Sept. 28, 2006).

Richardson also cites a document called "Policy and Procedure Special Order No. 04-09," which he argues is part of the personnel manual, as a source of a property interest. Document #18 at 11. The subject of the order is "Disciplinary Measures." It was issued by Thompson and it is marked as property of the police department that is not to be disseminated to the public. Document #18-2 at 13. In his deposition, Thompson stated that he proposed the order to the City Council, but the City Council never adopted it. Document #18-4 at 23. He admitted that he expects his officers to follow his orders, even if the orders are not adopted by the City Council. *Id*. at 26. The order provides that disciplinary action against an employee is to take one of the following forms: oral reprimand, written reprimand, loss of leave, suspension without pay, demotion, or dismissal. Document #18-2 at 19. Regarding loss of leave, suspension, demotion, and dismissal, the order states:

---

[2] Richardson also argues that because he worked for the City "well past any possible probationary period," it is reasonable for him to believe he was a permanent employee. Document #18 at 14. Richardson points to no evidence, however, to show that the City distinguished between probationary and permanent employees.

> Before any of the above actions take place, the employee will be notified in writing of the charges, given an explanation of the evidence, and have been provided the opportunity to present his or her side of the story.
>
> * * *
>
> Only punitive disciplinary action of loss or leave or suspension without pay for more than 12 hours, demotion or dismissal are subject to appeal outside the department. Such an appeal is to be made in writing to the Mayor within ten (10) days of the effective date of action by the Chief of Police. Please refer to any additional department or city policies and procedures covering disciplinary and the appeals process for further details and information.

*Id*. at 20-21.

These provisions do not create a property interest. The first provision describes in part a pre-termination procedure. The Eighth Circuit explained:

> On a number of occasions, the Supreme Court has held that pretermination procedures are essential, except in extraordinary circumstances, to protect property interests under the due process clause. *See* [*Loudermill*, 470 U.S. at 542, 105 S. Ct. 1487] (essential principle of due process is that deprivation of property be preceded by notice and opportunity for hearing); *Roth*, 408 U.S. at 569-70, 92 S. Ct. at 2705 (when protected interests are implicated, the right to some kind of prior hearing is paramount); *Bell v. Burson*, 402 U.S. 535, 542, 91 S. Ct. 1586, 1591, 29 L. Ed. 2d 90 (1971) (before the state can terminate a protected interest, it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective); *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L. Ed. 2d 113 (1971) (one must be given an opportunity for a hearing before he is deprived of any significant property interest). However, in each of these cases the property interest was separately identified and was not based upon the procedural process available. The Supreme Court recently stated: "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 401 U.S. 238, 250, 103 S. Ct. 1741, 1748, 75 L. Ed. 2d 813 (1983).

*Skeets v. Johnson*, 816 F.2d 1213, 1216 (8th Cir. 1987); *see also Hogue v. Clinton*, 791 F.2d 1318, 1324 (8th Cir. 1986). Richardson does not separately identify a property interest; rather, he relies on the procedure that he contends was due. A pre-termination procedure requiring the employer to notify the employee in writing of the charges, to explain to the employee the evidence against him,

8

and to give the employee an opportunity to be heard, does not establish grounds upon which termination must be based and therefore does not create a property interest in employment. The second provision describes a post-termination procedure. It is well-established that a post-termination grievance procedure, alone, does not create a constitutionally protected property interest. *Allen v. City of Pochahontas, Ark.*, 340 F.3d 551, 555 (8th Cir. 2003); *see also Hogue*, 791 F.2d at 1324 n.10 ("That an employee can expect review on termination does not in itself create a legitimate expectancy of continued employment."). In other words, even if Thompson failed to afford Richardson the pretermination or post-termination procedural protection required by Thompson's own order, unless Richardson had a property right in continued employment, that failure does not violate the due process clause.

Finally, Richardson relies on Arkansas law governing the Civil Service Commission to assert a property interest in his continued employment as a police officer. Document #18 at 7. Cities of the first class are authorized under Arkansas law to establish a board of civil service commissioners for the police and fire departments of their cities. Ark. Code Ann. § 14-51-102. If a city chooses to establish a board of civil service, the board must prescribe, amend, and enforce rules and regulations, including a procedure for the discharge of civil service employees. Ark. Code Ann. § 14-51-301(a) & 308. The Blytheville City Council adopted Ordinance 1629 on December 19, 2006. Ordinance 1629 dissolved the Blytheville Civil Service Commission, but provided that all of the duties and responsibilities of the Commission "shall be the responsibility of the Mayor and City Council." Document #18-2 at 3-5. An "appeal board" is referenced in the minutes of a City Council meeting that took place on November 20, 2007. Document #18-2 at 7. The City Council adopted Ordinance 1725 on February 21, 2012. Ordinance 1725 adopted the "Personnel Handbook, City of

9

Blytheville, Arkansas" and repealed any conflicting ordinances. As explained, the handbook states that the City of Blytheville is an at-will employer; it does not provide for an appeal board; and even if it did, as explained above, that the City failed to comply with its own termination procedures does not, absent a property right in continued employment, violate the due process clause.

Richardson did not have a property interest in continued employment, so the due process clause of the Fourteenth Amendment was not violated. Because Richardson has failed to meet this threshold requirement, his due process claim fails as a matter of law.

**IV.**

Richardson argues that the termination of his employment was a violation of Arkansas public policy. Document #18 at 9; Document #32 at 9-11. Under Arkansas law, an at-will employee has a cause of action for wrongful discharge if he is fired in violation of a well-established public policy of the state. *Tripcony*, 2012 Ark. at 9, 403 S.W.3d at 563. It is unclear whether Richardson intends to rely on the public policy exception to assert a property interest in continued employment in support of his procedural due process claim or whether he intends to assert a state-law claim for wrongful discharge. In paragraph 36 of the complaint, he states that he is entitled to recover damages for wrongful discharge, but the bulk of the complaint focuses on due process. *See* Document #2. Insofar as Richardson asserts a property interest in continued employment based on the right not to be discharged in violation of public policy, the defendants are entitled to judgment as a matter of law. The Eighth Circuit explained:

> The right not to be discharged in violation of the State's public policy is not a property interest for procedural due process purposes. It is a substantive right, the violation of which gives rise to a substantive claim under state law, just as the right not to be discharged on account of race, sex, or age gives rise to a substantive claim under federal law.

10

*Bennett v. Watters*, 260 F.3d 925, 929 (8th Cir. 2001) (citing *Drake*, 812 F.2d at 400-01).

The Court declines to exercise supplemental jurisdiction over any substantive claim Richardson may have under state law for wrongful discharge and any claim Richardson may have under the Arkansas Civil Rights Act. The Court may decline to exercise supplemental jurisdiction over state-law claims after dismissing all of the claims that arise under federal law. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7, 98 L. Ed. 2d 720 (1988). The Eighth Circuit has said: "We stress the need to exercise judicial restraint and avoid state law issues wherever possible. We also recognize within principles of federalism the necessity to provide great deference and comity to state court forums to decide issues involving state law questions." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). Here, the state-law issues relate to Arkansas public policy regarding terminating the employment of law enforcement officers. Respect for the principles of federalism requires that such issues be decided by the state courts. Consequently, the Court declines to exercise supplemental jurisdiction over Richardson's state-law claims.

## CONCLUSION

For the foregoing reasons, Rodney Richardson's motion for partial summary judgment is DENIED. Document #18. The defendants' motion for summary judgment is GRANTED with respect to Rodney Richardson's claims that arise under federal law. Document #25. Richardson's

11

claims under federal law are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Richardson's state-law claims, so those claims are dismissed without prejudice.

IT IS SO ORDERED this 7th day of December, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE